**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL REGAINS, ) | | |
|     Petitioner, ) | | |
| ) | | |
|     v. ) | | 11 C 5445 |
| ) | | |
| BRADLEY J. ROBERT, ) | | |
|     Respondent.[1] ) | | |

**MEMORANDUM AND ORDER**

Petitioner Paul Regain's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, the petition is denied.

**I.    Background**

    **A.    Prior Conviction**

Mr. Regains was convicted in Illinois in 1988 of aggravated indecent liberties with a child and aggravated criminal sexual assault. After unsuccessfully pursuing a direct appeal and state post-conviction relief, he filed a federal habeas corpus petition in 1994 while serving a mandatory term of supervised release. This court denied the petition and the Seventh Circuit affirmed. *Regains v. Snyder*, 2000 WL 1090639, 234 F.3d 1273 (7th Cir. Aug. 4, 2000) (unpublished order).

    **B.    Current Conviction**

Mr. Regains is presently before this court for a second time following a conviction for failure to register as a sex offender. This brush with the law arose from an incident on October 30, 2007, at an Olive Garden restaurant. In response to an anonymous tip that a man might be

---

[1] The respondent was incorrectly named as "Robert Bradley" instead of "Bradley J. Robert." The clerk is directed to correct the docket to reflect that the respondent's name is "Bradley J. Robert."

providing alcohol to a minor, Lansing police officer Todd Kulacz was dispatched to the Olive Garden.  When he arrived, Officer Kulacz and Mr. Regains spoke.  Officer Kulacz then checked an electronic database and discovered that Mr. Regain was a registered sex offender who had failed to register.  Based on this information, Officer Kulacz arrested Mr. Regains and transferred him to the Chicago Police Department, who determined that Mr. Regains had last registered as a sex offender in 2005.

### C. Direct Proceedings

#### 1. Trial Court

Mr. Regains was charged with two counts of failure to register, for the years 2006 and 2007.  The state court appointed counsel, who filed a motion to quash Mr. Regains' arrest and suppress the resulting evidence.  Following a hearing on the motion, the state trial court denied the motion.

Before Mr. Regain's trial started, Mr. Regains told the court that he wanted to proceed pro se and his lawyer represented, without opposition, that she had given Mr. Regains a copy of the indictment against him.  The court then engaged in the following colloquy with Mr. Regains and his counsel:

> THE COURT:  Let's nail it down. We did talk about this on an earlier date but basically, what I'm telling you, you have the right to represent yourself if you want to. It's a constitutional right that you have. And you are charged with a class two felony, is that correct?
>
> [Petitioner's attorney]:  That is correct.
>
> THE COURT:  And the range of sentence if you are sentenced to the penitentiary on that matter, it can be anywhere from three years to seven years with a two year mandatory supervised release period.   And if you go and represent yourself, I can't be your attorney. In other words, you are held to the same standard as if you were an attorney yourself. That's the kind of decision you have to make.  Like I

> say, I'm not going to be your attorney and help you out with the case because I can't be on one side or the other. Do you understand that?
>
> [Petitioner]: Yes sir.
>
> THE COURT: You still want to represent yourself in this case?
>
> [Petitioner]: Yes, sir, I will.
>
> THE COURT: Public Defender is given leave to withdraw.

Respondent Ex. C at J6-J7.

Mr. Regains then waived a jury, and his case proceeded to a bench trial. The State presented Officer Kulacz, who recounted the events at the Olive Garden leading to Mr. Regain's arrest. The State then called Chicago police officer Cleveland Hardy, who testified that, on September 26, 2005, he registered Mr. Regains as a sex offender in the City of Chicago. Officer Hardy also testified that Mr. Regains did not register as a sex offender in 2006 or 2007. Finally, the State presented a certified copy of Mr. Regain's underlying conviction for aggravated criminal sexual assault. Mr. Regains did not testify on his own behalf or present a defense. The trial court found that he was guilty, denied Mr. Regain's post-trial motions, and sentenced him to two concurrent terms of six years of imprisonment.

### 2. Illinois Appellate Court

Mr. Regains appealed his conviction. The appellate court appointed counsel, who argued that: (1) the trial court's admonishment about proceeding pro se did not comply with Illinois Supreme Court Rule 401(a); (2) the trial court improperly assessed a $200 State DNA I.D. system fee; and (3) the trial court improperly assessed a $50 court system fee. After the case had been fully briefed, Mr. Regains filed a pro se motion to amend his brief. The appellate court denied the motion, finding that Mr. Regains was represented by counsel and thus was not entitled to file a second set of pro se briefs. Mr. Regains nevertheless filed a pro se reply brief

which, among other things, criticized his appointed appellate counsel. The state appellate court rejected the brief and advised Mr. Regains that if he wished to file a pro se brief and have the State Appellate Defender removed as counsel, he must file a separate motion requesting specific relief. Mr. Regains did not take any action and on May 13, 2010, the Illinois Appellate Court affirmed his conviction.

### 3. Illinois Supreme Court

Mr. Regains filed a timely pro se petition for leave to appeal ("PLA") with the Illinois Supreme Court. It contains a table of contents with six points:

I. Judicial misconduct

II. Right to counsel

III. Speedy trial

IV. Appellate court used faulty information to establish their finding

V. Waiver under 401(c)

VI. Jeopardy

Respondent Ex. K.

In the PLA, Mr. Regains elaborated on these points. First, he asserted that the trial judge committed "judicial misconduct" and denied him his "right to be present at all critical stages of his trial," his right to due process, and his right to a speedy trial by "more than once" holding evidentiary hearings "in a deceptive manner" as part of a "conspiracy" with his defense attorney and the Assistant State's Attorney. *Id*. Second, he argued that prior to his decision to reject her services, the public defender representing him provided constitutionally ineffective assistance by (a) refusing to allow him to participate in his trial, refusing to share discovery, and refusing to discuss trial strategy; (b) lying about "discovery, speedy trial, and about plea's [sic] said to be

pending"; (c) failing to "investigate witnesses or other issues petitioner requested"; and (d) denying "petitioner a speedy trial to enforce a plea." *Id*. Third, he contended that his appellate counsel was ineffective for failing to challenge trial counsel's effectiveness. Fourth, he claimed that his public defender, the trial judge, and the Assistant State's Attorney conspired to deny him his right to a speedy trial. Fifth, he alleged that the appellate court "used faulty information" to affirm his conviction, specifically:

1. [During the trial for his predicate conviction of aggravated criminal sexual assault,] Petitioner was found guilty, after several charges were dismissed, the State appointed a new Public Defender and within days — two — Public Defender rested, no defense was present.

2. Petitioner did not plead guilty to several counts of U.U.W., he was found guilty. One act, one crime, one gun — no warrents [sic] — 02 CR 03007.

3. Petitioner was not a Cook County Sheriff from 1975 to 1984 — it was from 1978 to 1980. Took leave to test with Oakland Police in California from 1980 to 1983.

4. The Court completely miss [sic] the debate concerning the Motion to Dismiss — my attorney would not present it, and the Court would not allow it without petitioner agreed to go pro se, (transcripts J.7, 8) Several letters were sent to the Court.

*Id*.

Sixth, Mr. Regains argued that his waiver of counsel was improper under Illinois Supreme Court Rule 401(a) because after his appointed counsel declined to submit a motion to dismiss he had prepared, "[s]ome of the conversation was not part of the record, what is part of the record show [sic] Petitioner waiver was to submit his Motion to dismiss," and "[t]he record, not the interpretation, show the Court did not comply with Rule 401(a)"; and

Seventh, Mr. Regains asserted that his conviction violated double jeopardy principles. The basis for this argument is unclear, but Mr. Regains appears to be arguing that he was required to register as a sex offender for ten years beginning in 1993 so by 2007, when he was

arrested at the Olive Garden for failure to register, he was not in fact required to register. Mr. Regains also appears to be contending that the conviction for failure to register was due to unspecified political chicanery because "[t]he State's Attorney became Will County States Attorney. The politics of law suck." *Id*. at 15.

The Illinois Supreme Court denied Mr. Regains' PLA on September 29, 2010, and Mr. Regains does not appear to have filed a petition for a writ of certiorari with the United States Supreme Court. The respondent's counsel represents that he searched state court records, which do not indicate that Mr. Regains filed a state postconviction petition under 725 ILCS § 5/122-1. The time to do so has expired, as a state postconviction petition would have been due on June 28, 2011. *See* 725 ILCS § 5/122-1(c) ("If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition").

### D. Federal Habeas Petition

Mr. Regains filed a § 2254 federal habeas corpus petition (which is dated April 27, 2011) on May 9, 2011. The court agrees with the respondent that Mr. Regains appears to assert five groups of claims:

1. The public defender provided constitutionally ineffective assistance prior to Mr. Regains' decision to proceed pro se by:

   a. "obstructing speedy trial" by agreeing to continuances;

   b. failing "to obtain bond hearing transcripts with earlier indictment hearing transcripts";

   c. refusing to obtain statements from unspecified witnesses;

   d. refusing obtain transcripts relating to prior convictions that "the State intended to use to enhance charges";

      e.      denying Mr. Regains access to discovery materials while she was still counsel of record, as well as after she was granted leave to withdraw, because "she was clueless";

      f.      failing "to properly prepare for trial or motions" or pursue necessary research because her "main objective was to obtain a guilty plea";

      g.      failing to obtain sufficient "information for examination of the State's witnesses";

      h.      failing to "research law on probable cause, the anonymous alleged caller, as to credibility or admissibility";

      i.      failing to take unspecified action regarding "witnesses as to how the arrest was made, under probable cause";

      j.      refusing to "present or investigate the issue of Double Jeopardy";

      k.      participating in secret hearings outside Mr. Regains' presence;

2.      Mr. Regain's appellate counsel was ineffective for failing to contend that trial counsel was ineffective.

3.      The trial judge committed "judicial misconduct" and violated due process by:

      a.      holding an evidentiary hearing without Mr. Regains' knowledge or consent;

      b.      granting "continuance to the state but "charg[ing] them, 'by agreement' to Petitioner manipulating the delay in faver [sic] of the State";

      c.      appointing an additional public defender without Mr. Regains' knowledge or consent, and against whom a complaint had been filed with the Illinois Attorney Registration and Disciplinary Commission;

      d.      "While holding these hearing [sic], the Court, implying Petitioner was in Court, called Petitioner['s] name, as if the Court was instructing him or had advised him . . . . Knowing Petitioner was not in the Courtroom, Mr. Dillon of the State's Attorney's office, and Mr. Anderson, the Public Defender also was there, and consorting with the State, violated the law and Petitioner's Constitution[al] right where they conspired together to do so, by their action and or their failure to act, knowing petitioner was not there, constituted fraud, a criminal offense";

e. denying Mr. Regains his "sixth amendment right to be present in his own defense, and make intelligent and knowledgeable decision concerning his trial at a critical stage where false information was being given to the Court, and the Court used this information to form opinions";

f. declining to appoint new counsel to represent him at sentencing; and

g. violated his right to due process by noting that continuances were by agreement when, presumably, Mr. Regains did not personally agree with his counsel's decision to agree.

4. The appellate court violated Mr. Regains' constitutional rights when it would not allow him to file a pro se brief supplementing the brief filed by his appointed counsel.

5. Mr. Regain's double jeopardy and due process rights were violated because, after his initial conviction for aggravated criminal sexual assault, petitioner "was obligated to register for 10 years after being released. He was released in Aug. 1993, this obligation ended Aug. 2003, the Court redacted the extenion [sic] the State had done, and Petitioner was found not guilty by two different Courts." *See* Dkt. 1.

On April 9, 2012, the court entered an order requiring the respondent to file a memorandum, by April 19, 2012, "addressing (1) whether petitioner's admonishment argument is procedurally defaulted given his expressed desire to incorporate the arguments in his PLA into his § 2254 petition; and (2) if not, whether the argument states a cognizable federal constitutional claim, and (3) if so, whether he is entitled to relief under § 2254 based on that claim." The court also set a date for the petitioner to file a response. The respondent and petitioner both filed memoranda discussing the issues identified by the court.

## II. Discussion

### A. "In Custody" Requirement

Mr. Regains was incarcerated when he filed his § 2254 petition but has since been released. The respondent represents that his sentence has been completely discharged. His conviction has collateral consequences so the discharge of his sentence does not moot his petition. *See Spencer v. Kemna*, 523 U.S. 1, 7-13 (1998) (assuming collateral consequences of criminal convictions). The court thus turns to the arguments raised in Mr. Regains' § 2254 petition and the respondent's contention that the entire petition is barred by the doctrine of procedural default.

### B. Procedural Default

Procedural default is a doctrine that requires a petitioner to raise arguments before the state courts in a certain way in order to be able to present those arguments in a federal habeas corpus petition. If a petitioner fails to do so, the improperly raised claims are deemed procedurally defaulted and the federal court may not reach their merits. Specifically, a habeas petitioner must present his claims to all three levels of the Illinois courts – trial, appellate, and the Illinois Supreme Court – to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). This means that his claims must appear not only in his PLA but also in his filings with the state trial court and intermediate appellate court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Boerckel*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction

proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory").

Here, Mr. Regains' state appellate brief contained three issues: (1) the trial court's admonishment about proceeding pro se did not comply with Illinois Supreme Court Rule 401(a); (2) the trial court improperly assessed a $200 State DNA I.D. system fee; and (3) the trial court improperly assessed a $50 court system fee. Mr. Regains raised one of these claims (the Rule 401(a) admonishment) before the Illinois Supreme Court in his PLA. This claim thus was presented in state court in a way that would allow Mr. Regains to raise it in federal court and avoid procedural default.

The court has carefully studied Mr. Regains' lengthy § 2254 petition and construed it broadly. The respondent asserts that the § 2254 petition does not contain any claims that were raised in all levels of the state court proceedings. The court disagrees, as in two places in his § 2254 petition, Mr. Regains states that he incorporates his PLA into that filing. *See* Dkt. 1, Page ID#8 & Page ID#14.

It is true that a petition seeking relief under § 2254 must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005), *quoting* Rule 2(c) of the Rules Governing Section 2254 Cases; *see also* Advisory Committee's 1976 Note on Rule 4 of the Rules Governing Section 2254 Cases ("Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error") (internal quotations omitted). Moreover, § 2254 does not "require federal courts to review the entire state record of habeas corpus petitioners to ascertain whether facts exist which support habeas relief." *Adams v. Armontrout*, 897 F.2d 332, 333–34 (8th Cir. 1990) (affirming dismissal of habeas petition which referred the court to the state

appellate briefs, transcripts, and the case record did not describe the facts supporting the asserted grounds for relief).

Nevertheless, Mr. Regains may have believed that his specific request to incorporate his PLA into his § 2254 petition was sufficient. As discussed above, the admonishment claim is the only one that was raised at all three levels of the state court proceedings. Because Mr. Regains is pro se, the court will allow him to proceed with that claim. *See Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (habeas petition was adequate where it "made clear and repeated references to an appended supporting brief, which presented [the petitioner's] federal claim with more than sufficient particularity"); *Victery v. Arizona*, No. CV–09–8125–PCT–FJM, 2011 WL 2940763, at *5 (D. Ariz. May 2, 2011) ("Had Petitioner made any effort to set out his grounds for relief, and referenced portions of the attached exhibits to provide the meat on an otherwise bare skeleton, then the court would be obligated to consider those exhibits. Petitioner did not. His original Petition made no reference to the exhibits. There was no skeleton of claims on which their meat could hang"); *Walton v. Hill*, 652 F.Supp.2d 1148, 1170–1171 (D. Or. 2009) (while not preferable, petition could explicitly incorporate by reference arguments set out in exhibits); *Castillo v. Quarterman*, No. 2:03-CV-0424, 2006 WL 3227312, at *3 (N.D. Tex. Nov. 6, 2006) (where petitioner expressed his desire to incorporate by reference, "[i]n the interest of justice, the undersigned hereby presumes petitioner pleads the same facts he pled in the state habeas proceedings and will refer to said state habeas application in determining the bases for petitioner's claims"); *Shahumyan v. Donelli*, No. 05CV2821(ARR), 2006 WL 148912, at *5 (E.D.N.Y. Jan. 19, 2006) ("Although petitioner does not explicitly raise a separate claim that his sentence was excessive in his habeas petition, he "realleges and incorporates by reference his argument(s) in [his state court filings] as is fully stated therein . . . . Therefore, this petition will

be construed to contain the claim that the sentence imposed upon petitioner – seven years incarceration and three years supervised release – is excessive"); *cf. United States ex rel. Carini v. Mote*, No. 03 C 9416, 2004 WL 442671, at *8 (N.D. Ill. Mar. 3, 2004) (dismissing claims that petitioner sought to incorporate by reference because incorporation "did not sufficiently state facts that would enable this court to determine from the face of the petition alone" whether the claims merited review).

Because the court will permit Mr. Regains to pursue the admonishment claim, it need not address the respondent's argument that adding this claim at this time creates a statute of limitations problem. The court thus turns to whether the Mr. Regains is entitled to relief based on the admonishment.

### C. Is the Admonishment Claim Cognizable?

The respondent argues that the admonishment claim is not cognizable (*i.e.*, properly before this court) because it arises under state law and only federal law claims may be raised in a § 2254 petition. The respondent, however, also acknowledges that some courts in this district have questioned whether Rule 401 claims are solely creatures of state law. *See U.S. ex rel. Lamb v. Knop*, 99 C 4873, 2000 WL 1780345, at *3 n.2 (N.D. Ill. Nov. 2, 2000) ("as [petitioner's] brief to the state court argued only terms of a violation of Rule 401, its [sic] debatable whether he fairly presented the issue as a constitutional claim to the state courts"); *c.f. U.S. ex rel. Jenkins v. Dobucki*, 12 F. Supp. 2d 827, 829 n.1 (N.D. Ill. 1998) (acknowledging that a claim "that a state court violated a state procedural rule is not cognizable on federal habeas review" but construing the petitioner's pro se filing "as alleging that the trial court deprived him of his constitutional right to counsel without obtaining a valid waiver"). The court need not reach this point as for the following reasons, Mr. Regains' admonishment claim fails on the merits.

### D. Mr. Regains' Admonishment Claim

#### 1. Standard of Review

A habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See Williams v. Taylor*, 529 U.S. at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). Moreover, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

## 2. The State Court's Decision

"The Sixth Amendment of the United States Constitution guarantees a party engaged in a criminal prosecution the assistance of counsel. The Due Process Clause of the Fourteenth Amendment incorporated this right, making it applicable to state criminal prosecutions as well." *Smith v. Grams*, 565 F.3d 1037, 1044 (7th Cir. 2009) (internal citations omitted). Nevertheless, the Constitution "does not permit a state to force unwanted counsel upon a party." *Id., citing Faretta v. California,* 422 U.S. 806, 820 (1975) ("To thrust counsel upon the accused, against his considered wish, thus violates the logic of the [Sixth] Amendment"). Thus, the Supreme Court has held that a criminal defendant has a constitutional right to refuse appointed counsel and proceed without representation if he voluntarily and intelligently chooses to do so. *Faretta v. California,* 422 U.S. at 835.

The United States Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Rather, it has instructed courts considering whether the waiver of the right to counsel was knowing and intelligent to consider the unique facts and circumstances of each case, "including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*. The court must also evaluate whether the defendant was "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta v. California*, 422 U.S. at 835 (internal quotations omitted).

Turning to Mr. Regains' PLA, he appears to be contending that this court should find that his waiver of counsel was not knowing and intelligent because he was not correctly admonished regarding the maximum potential sentence. Mr. Regains was charged with two Class 2 felonies

punishable by a three to seven year term of imprisonment and was admonished about sentences for Class 2 felonies. *See* 730 ILCS § 5/5-8-1(a)(5). However, due to his criminal history, he was ultimately sentenced as a Class X offender, which meant he was eligible for a six to thirty year term of imprisonment. *See* 730 ILCS § 5/5-8-1(a)(3). He was sentenced to concurrent six-year sentences that were within the Class 2 sentencing range in his admonishment but were at the higher end of the Class 2 range and the bottom of the Class X range.

With respect to the admonishment, the Illinois Appellate Court held that:

Defendant waived counsel immediately prior to trial. At that time, the trial court admonished the 60-year-old [petitioner] that he was charged with two separate counts of failure to report [as a sex offender], a Class 2 felony, and the assistant public defender said that she had given a copy of the indictment to [the petitioner]. Furthermore, [the petitioner] is a repeat offender. Therefore, it is disingenuous of him to argue that he was not familiar with the nature and elements of the charges. Additionally, [the petitioner] showed that he was familiar with the nature and elements of the offense because he alleged that there was a double jeopardy impediment to the charge of failure to register based on his prior conviction for that offense. We reject [the petitioner's] argument that this shows he was mistaken about the charges. If [the petitioner] did not know the nature of the charges, he could not have asserted a double jeopardy argument. His knowledge of the charges can be inferred from his assertion of the double jeopardy argument, and fell within the realm of dangers of pro se representation that the trial court warned him about. Even if we were to disregard the double jeopardy argument, [the petitioner] explicitly stated in open court that he disagreed with the indictment. Therefore, it is plain that he read the indictment and was familiar with the charges.

The trial court also clearly admonished [petitioner] that he had the constitutional right to proceed pro se or that he could proceed with an attorney but that he could not do both. The trial court explicitly admonished [petitioner] about the dangers of proceeding pro se: the court told [petitioner] that he would be held to the same standards as an attorney, and that the court would not act as his attorney and would not assist him because the court could not be partial to one side or the other.

Finally, the trial court admonished [petitioner] that he faced a prison term of anywhere from three years to seven years with two years of mandatory supervised release. [Petitioner] received a six-year sentence, one year less than the seven-year maximum indicated by the court, and the minimum possible Class X sentence. Under these circumstances, the trial court substantially complied with

> Rule 401 and [petitioner] was not prejudiced by the absence of an admonishment about the possible 30-year Class X sentence.
>
> It is clear that the trial court admonished [petitioner] and determined that he understood he was charged with failure to register as a sex offender. It is also clear that [petitioner] was sentenced to a prison term less than the maximum indicated by the court. Therefore . . . [petitioner] in this case was admonished about a possible penalty more serious than the sentence he received, and he acknowledged that he understood. Under these circumstances, we believe that [petitioner's] waiver of counsel was knowing, voluntary, and intelligent and that he suffered no prejudice.

Dkt. 14-1 at 12-13.

The Illinois Appellate Court ruled on the merits of Mr. Regains' waiver argument based on state law but did not consider federal law. This is irrelevant if the standard the state court applied is as demanding as the federal standard. *Oswald v. Betrand*, 374 F.3d 475, 477 (7th Cir. 2004), *citing Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam); *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The federal standard, discussed above, is consistent with the state standard so the absence of federal precedent in the Illinois Appellate Court's opinion does not pose a problem in this § 2254 proceeding.

With respect to the merits of Mr. Regains' arguments, the trial court warned Mr. Regains (who was 60 years old at the time) about the dangers of pro se representation. It also told him that he was charged with two separate counts of failure to report as a sex offender, a Class 2 felony, and that he had received a copy of the indictment. As noted by the Illinois Appellate Court, Mr. Regains understood the nature and elements of the charges because he argued that his prior conviction for failure to register meant that the current charges were barred by double jeopardy. With respect to the central issue in this § 2254 proceeding – the admonishment about the possible sentence – the Illinois Appellate Court held that because Mr. Regains was warned about the perils of proceeding pro se and his actual sentence was within the sentencing range that

he was warned about, he suffered no prejudice and the error did not call his waiver of the right to counsel into question.

A valid waiver "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Smith v. Grams*, 565 F.3d at 1065, *quoting Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (Black, J., plurality opinion). However, while regrettable, an error in apprising a defendant regarding his potential sentencing range does not necessarily invalidate the defendant's waiver of counsel, as even if the defendant "lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." *Iowa v. Tovar*, 541 U.S. at 92, *quoting Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (internal quotations omitted).

The court finds that the state court's rejection of Mr. Regains' waiver of counsel claim was neither "contrary to" nor "an unreasonable application of" clearly established federal law and satisfied the constitutional minimum. Mr. Regains clearly was aware of the nature of the charges against him and was told that proceeding pro se was a bad idea that was not in his best interests. He was not a defendant in state court criminal proceedings for the first time and was able to articulate his unhappiness with the attorney appointed to represent him as well as an understanding of the charges against him and how they were connected to his prior conviction. Moreover, he received a sentence within the range that the trial court explained was applicable. He knew that he might be sentenced to six years and choose to proceed pro se. Having been sentenced to that exact term of imprisonment, his assertion that his waiver of counsel was invalid

based on an inaccurate admonishment about his sentence rings hollow. Accordingly, the court finds that Mr. Regains is not entitled to relief under § 2254.

E. **Certificate of Appealability**

The court next turns to whether a certificate of appealability should issue. *See* Rule 11(a) of the Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant"). Under 28 U.S.C. § 2253(c)(2): "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

As noted above, Mr. Regains received incorrect information about his sentencing range. This court believes that his Sixth Amendment issue is properly before the court and that the incorrect information is insufficient to cast doubt on the validity of his waiver of counsel and thus does not call the reasonableness of the state court's decision into question. Nevertheless, it is possible that reasonable jurists could differ on whether the error negated the validity of the waiver. Because the court finds that the issue presents a substantial question of constitutional law, it will issue a certificate of appealability.

## III. Conclusion

For the above reasons, Mr. Regains' § 2254 petition [1-1] is denied and the court issues a certificate of appealability. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket. The clerk is also directed to correct the docket to reflect that the respondent's name is Bradley Robert.

DATE: June 27, 2012                    _____
                                       Blanche M. Manning
                                       United States District Court Judge